IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     CRIMINAL ACTION NO. 2:11-cr-00175

DOMINIQUE DAVON CALHOUN,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Dominique Davon Calhoun's Motion in Limine [Docket 26.] For the reasons that follow, Defendant's Motion in Limine is **GRANTED IN PART** and **DENIED IN PART**.

*I. FACTUAL BACKGROUND*

The following facts were developed from evidence and testimony offered at the November 17, 2011, pretrial motions hearing:

On March 23, 2011, at approximately 12:30 a.m., Senior Patrolman Thomas A. Rogers of the Charleston Police Department was sitting in his police cruiser and monitoring suspected drug activity near an apartment building located on Jackson Street in Charleston's East End. The driver's side window of Officer Rogers' cruiser was open slightly. A video camera was mounted just to the right of the cruiser's rear view mirror.

At about 12:31 a.m., Officer Rogers noticed a white sedan turn onto the fourteen hundred block of Jackson Street and head down the street away from Rogers's location. Seconds later, Officer Rogers heard a gunshot. He looked in the direction of the white sedan, heard five more shots, and saw muzzle flashes flaring out of the passenger side window of the sedan as if they were going into the side of a house. Officer Rogers took off after the white sedan, turned on his siren and lights, and radioed for backup. With Rogers in pursuit, the sedan turned off Jackson Street and onto Beauregard Street. Officer Rogers lost sight of the sedan until he turned the corner onto Beauregard Street. He re-established sight of the sedan as it raced away down another street. For the next six minutes or so, Officer Rogers—joined by other officers in other cruisers—pursued the sedan as it sped through the East End, onto the interstate, and then through various neighborhoods on Charleston's West Side.

The high-speed chase through darkened and deserted city streets abruptly ended when the white sedan, a Honda, entered a narrow alley between two houses and slammed on its brakes. The driver's side door immediately flew open and the driver, later identified as Derrick Lamb, fled on foot. Officer Rogers and Charleston Police Corporal David W. Dalton immediately took chase. The passenger, Defendant Calhoun, opened the front passenger door, raised up his arms, and surrendered to the other police officers arriving at the scene. No gun was found on Defendant or in the Honda. While chasing after the driver, Officers Rogers and Dalton saw Mr. Lamb jump over a fence beside two houses. After briefly waiting for the assistance of a police dog, the officers found Lamb hiding near a shed behind a house and, at approximately 12:45 a.m., placed him under arrest. The officers found no gun on Lamb or in the vicinity where Lamb was found.

While Rogers, Dalton, and other assisting officers were busy apprehending Defendant and Lamb, the Charleston Police Department received a call at about 12:37 a.m. from an individual who lived on Beauregard Street. The call was referred to Charleston Police Detective Charles Whittington, who, as it turned out, happened to be just a half block away from the fourteen hundred block of Jackson Street at the time of the shooting and had heard the shots. Detective Whittington immediately went to the caller's Beauregard residence and interviewed him. The man only identified himself as "David." (Detective Whittington later learned the man's complete name was Lawrence David Hatten). Detective Whittington testified at the pretrial motions hearing that

> [Hatten] was holding the revolver in his hand. He had wrapped it up in a sock. That's how he picked it up out of the alleyway and was continuing to hold it in his hand. Told me he heard several gunshots, I believe it was six that he put in his statement, ran out on his front porch there, which overlooked Beauregard Street, saw a white sedan speed by and a subject throw an object out the passenger side of the car window there into the alleyway.
>
> He then left his residence, walked down the sidewalk, walked in the alleyway to see what the individual had throwed out, and that's when he saw a blue in color revolver laying in the alleyway. . .
>
> He picked—he had that sock in his hand, picked the revolver up, come back to his residence and that's when he called in to report it to Metro that—what he had observed.

(November 17, 2011, Pretrial Motions Hearing Tr. at 51.)

After retrieving the gun from Hatten, Detective Whittington radioed Officer Rogers and advised him that he had located the gun. When Officer Rogers inspected the revolver later that evening, he noted that there were six spent shell casings in the cylinders of the gun.

In May 2011, Mr. Hatten died.

3

On July 19, 2011, a federal grand jury returned a one-count indictment charging Defendant with felon-in-possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). At the November 17, 2011, pretrial motions hearing, the Court heard evidence and argument concerning the admissibility of the gun. Trial is scheduled to begin on January 17, 2012.

## II. DISCUSSION

*A.     Defendant's Motion in Limine*

In his Motion in Limine, Defendant seeks exclusion at trial of: (1) any out-of-court statements made by Mr. Hatten; (2) testimony that the gun specified in the indictment "was recovered on the night of the alleged offense"; and (3) the gun itself.

In support of his position, Defendant argues that because Mr. Hatten is deceased his out-of-court statements to the police are testimonial hearsay prohibited by the Confrontation Clause. *See Davis v. Washington*, 547 U.S. 813 (2006) (stating that statements made in the course of police questioning are "not testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose is to establish or prove past events potentially relevant to later criminal prosecution."). Defendant reasons *a priori* that without Mr. Hatten's statements the United States cannot authenticate the gun, and, thus, the probative value of the gun necessarily fails to meet the threshold requirements for admissibility under Rule 401 of the Federal Rules of Evidence. Alternatively, Defendant argues that even if the Court were to admit the gun under Rule 401, the gun should nonetheless be excluded under Rule 403 on the grounds that "the slight weight of such evidence would be substantially outweighed by the

danger of unfair prejudice by allowing the jury to speculate as to the time and manner in which the revolver came to be at the location of its recovery." (Docket 26 at 4.)

The United States agrees that Mr. Hatten's out-of-court statements are inadmissible.[1] It contends, however, that sufficient circumstantial evidence links the gun to the crime charged for the purpose of satisfying relevancy standards. More specifically, the United States argues that where: (1) the gun was provided to the police just minutes after the shooting; (2) by a resident of Beauregard Street—the street where Officer Rogers briefly lost sight of the white Honda; and (3) the gun contained six empty shell casings, these collective facts tend to prove a consequential fact, namely, that Defendant, a previously convicted felon, illegally possessed that particular gun.

*B. Applicable Law*

The issues presented in this case implicate closely-related evidentiary concepts of relevance and authentication. At the November 17, 2011, pretrial motions hearing, the Court explored with counsel the question of whether the admissibility of the gun implicated relevancy or authentication evidentiary rules, or both. Counsel for the United States stated that the issue was governed by a relevancy analysis; Defendant, at first, asserted that both relevancy and authentication principles applied, but later appeared to take the position that the standard for relevancy governed. For the

---

[1] In light of this significant concession, the Court need not decide whether any of Mr. Hatten's statements would have been admissible as nonhearsay on the grounds that they would not be offered for the truth of the matter asserted. *Compare United States v. Brown*, 767 F.2d 0178, 1084 (4th Cir. 1985) (finding unduly prejudicial the admission of "background" hearsay testimony where the hearsay tended to establish that the defendant in fact committed the crime) *and United States v. Cass*, 127 F.3d 1218, 1223 (10th Cir. 1997) (finding erroneous the admission of out-of-court statements offered as "background" where the statements were extensive and directly implicated the defendant in the crime charged, and, thus, unduly prejudicial under Fed. R. Evid. 403) *with United States v. Love*, 767 F.2d 1052, 1063-64 (4th Cir. 1985) (finding that agent's testimony was properly admitted because it was offered not for its truth and only to explain why the officers and agents made the preparations that they did in anticipation of the defendants' arrest).

reasons set forth in this Opinion, the Court believes that Defendant's initial instincts were correct and that these issues are properly resolved by reference to both the authentication and relevance evidentiary rules. *See United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992) ("Authentication 'represent[s] a special aspect of relevancy'. . . in that evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims.") (internal citation omitted); *see also* 2 Kenneth S. Broun, et al., *McCormick on Evidence* §§ 212-13 (6th ed. 2006) ("First the proponent asserts that a proffered item is relevant to prove (or disprove) a fact of consequence in the case. This assertion of relevance then determines what it is the proponent claims an offered item to be for purposes of authentication, typically that it is connected to a specific person or to one of the litigated events."); 5 Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual* § 901.02 (9th ed. 2006) ("Closely related to Rule 401 is Rule 901(a), the basic rule of authentication . . . . Essentially, any relevant evidence that a factfinder could believe is enough for authentication."); 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 9-1 (4th ed. 2000) ("It seems apparent that the draftsmen of Rule 901(a) opted to treat authentication and identification as specialized rules of relevance.")

The federal evidentiary rules governing relevance are succinctly stated: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence may "be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

"[R]elevance typically presents a low barrier to admissibility." *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003). Absent limited exceptions under other rules, "to be admissible, evidence need only be 'worth consideration by the jury,' or have a 'plus value.' " *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997) (internal quotation marks omitted).

Physical evidence, such as a gun, must be authenticated before it is admitted in a trial. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The principle of authentication is a facet of relevancy analysis for the simple reason that, if the physical object the proponent seeks to admit at trial is not what the proponent claims it is, then it cannot tend to make the existence of any consequential fact more or less probable.

"Before admitting evidence for consideration by the jury, the district court must determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Branch*, 970 F.2d at 1369; *see also* Fed. R. Evid. 104(b) and 901(a) advisory committee's notes. "This procedure insures that the jury will not be tainted by hearing prejudicial evidence—or learning of its existence—until the proponent has demonstrated that it will be able to provide an adequate foundation for admission." *Branch*, 970 F.2d at 1371. As with relevancy, "the burden to authenticate under Rule 901 is not high—only a prima facie showing is required." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009). Moreover, the rules of evidence do not apply in proceedings concerning preliminary fact determinations under Rule 104 of

the Federal Rules of Evidence. Fed. R. Evid. 1101(d)(1); *see also United States v. Matlock*, 415 U.S. 164, 172-73 (1974) (stating the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence). If a district court makes the threshold determination that sufficient evidence supports a finding that the evidence is what the proponent claims, "the ultimate resolution of authenticity is for the jury." *Branch*, 970 F.2d at 1370-71. Notwithstanding a pre-trial determination of admissibility, a district court must also assess at trial the adequacy of the showing made to the jury. *Id.* at 1371.

    C.    *Analysis*

In his Motion in Limine, Defendant challenges the United States' ability to provide an adequate foundation at trial for admission of the gun obtained by Detective Whittington from Mr. Hatten. His strategy is simple: no gun, no case. The United States' presentation of evidence is complicated by the fact that Mr. Hatten has recently died and, thus, is unavailable to testify.

Based on the record, it appears that the crux of Mr. Hatten's testimony would have been that: (1) on March 23, 2011, just after 12:30 a.m., Mr. Hatten heard six shots in the vicinity of Jackson and Beauregard Streets; (2) immediately thereafter Mr. Hatten saw a white car drive down Beauregard Street and he observed something thrown from the passenger-side window of the car into an alley; (3) Mr. Hatten then walked into the alley, found a gun, and picked it up with a sock; (4) Mr. Hatten immediately reported these events to the police; and (5) when an officer arrived shortly thereafter at Mr. Hatten's house, Mr. Hatten gave the officer the gun (contained in the sock).

Based on the record as it now stands—without Mr. Hatten's testimony—competent evidence potentially can establish, among other facts, the following: (1) Officer Rogers heard six shots fired on Jackson Street on March 23, 2011, at approximately 12:31 a.m.; (2) contemporaneous with hearing

8

five of the shots, Officer Rogers also observed muzzle flashes flaring from the passenger side window of the white Honda sedan that Defendant was traveling in; (3) Officer Rogers observed the Honda race away from the scene and turn right onto Beauregard Street; (4) Rogers took off after the Honda, but momentarily lost sight of the car when it turned onto Beauregard Street; (5) at all other times Officer Rogers or his colleague, Officer D.W. Walton, maintained visual contact with the Honda; (6) at no time did Officer Rogers or other assisting officers observe Defendant or the driver throw anything out of the car; (7) no gun was located on Defendant, the driver, in the car, or in any other location; (8) shortly after 12:30 a.m., the police received a telephone call; (9) in response to this call, the police went to Mr. Hatten's Beauregard Street residence and retrieved an RG .22 LR caliber revolver, serial number T735186; and (10) the gun contained six spent shell casings.[2]

### III. CONCLUSION

Based on the foregoing facts, the Court **FINDS** that the United States, as the proponent of the challenged evidence, has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic, that is, that this particular gun was possessed by Defendant on March 23, 2011. Any deficiency in the prosecution's evidence is a matter of weight—not admissibility—and "the ultimate resolution of authenticity is for the jury." *Branch*, 970 F.2d at 1371.

The Court also **FINDS** that based on the nature of the crime charged, that is, felon-in-possession, evidence of the gun tends to make the existence of a consequential fact more or less probable than it would be without the evidence, and thus, is relevant. The Court further **FINDS** that

---

[2] These preliminary findings are just that, preliminary. At trial, depending on any number of potential developments, one or more of these facts may be deemed inadmissible or additional facts admissible. As with all evidence, the Court will assess the legal competence of the parties' evidence throughout the course of trial.

evidence of the gun is not substantially outweighed by the danger of unfair prejudice because of the close temporal connection between the alleged shooting and the discovery of a gun, as well as the fact that the gun had been fired six times and was located in proximity to the alleged crime.

Accordingly, Defendant's Motion in Limine [Docket 26] is **GRANTED IN PART** and **DENIED IN PART**. The Motion in Limine is **GRANTED** as it relates to exclusion of Lawrence David Hatten's out-of-court statements; it is **DENIED** as to Defendant's relevancy and authenticity challenges.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: December 8, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE